**IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| PLEX CAPITAL, LLC<br>9225 Indian Creek Parkway<br>Suite 1050<br>Overland Park, Kansas  66210 | ) ) ) ) ) | |
|      Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.: _____ |
| DENTON MD OPCO LLC d/b/a PEAK<br>HEALTHCARE AT DENTON<br>710 Obrecht Road<br>Sykesville, Maryland  21784 | ) ) ) ) ) | |
| SERVE ON:   Resident Agent<br>                Corporate Creations Network, Inc.<br>                2 Wisconsin Circle, #700<br>                Chevy Chase, Maryland  20815<br>and | ) ) ) ) ) ) | |
| DENTON NURSING AND REHAB, LLC<br>420 Colonial Drive<br>Denton, Maryland  21629 | ) ) ) ) | |
| SERVE ON:   Resident Agent<br>                c/o Jack Ribakow<br>                6607 Park Heights Avenue, Apt A2<br>                Baltimore, Maryland  21215<br>and | ) ) ) ) ) ) | |
| KEY HEALTH MANAGEMENT LLC<br>36 Airport Road, #105<br>Lakewood, New Jersey  08701 | ) ) ) ) | |
| SERVE ON:   Resident Agent<br>                AAA Services, LLC<br>                125 Locust Street<br>                Harrisburg, Pennsylvania  17101 | ) ) ) ) ) ) | |
|       Defendants. | ) | |

**<u>COMPLAINT</u>**

Plaintiff Plex Capital, LLC ("**Plex**"), by and through its undersigned counsel, hereby sues the Defendants Denton MD Opco LLC d/b/a Peak Healthcare at Denton ("**Peak Healthcare**"), Denton Nursing and Rehab, LLC ("**Denton Nursing**"), Key Health Management LLC ("**KHM**"), and as grounds therefore avers as follows:

## PARTIES ALLEGATIONS

1.      Plaintiff Plex Capital, LLC (the "**Factor**" or "**Plex**") is a Kansas limited liability company with its principal place of business in Johnson County, Kansas.

2.      Defendant Denton MD Opco LLC d/b/a Peak Healthcare at Denton ("**Peak Healthcare**" or "**Account Debtor**") is a Maryland limited liability company that operates a nursing facility and has its principal place of business in Denton, Maryland.

3.      Defendant Denton Nursing and Rehab, LLC ("**Denton Nursing**" or "**Account Debtor**") is a Maryland limited liability company that operates a nursing facility and has its principal place of business in Denton, Maryland.

4.      Defendant, Key Health Management LLC ("**KHM**") is a Pennsylvania limited liability company having its principal place of business in Lakewood, New Jersey.

## SUBJECT MATTER JURISDICTIONAL AND VENUE ALLEGATIONS

5.      This Court has original subject matter jurisdiction over the claims in this matter, pursuant to 28 U.S.C. § 1332(a), as detailed below the Plaintiff is a citizen of the State of Kansas, and each Defendant is a citizen of a different state than the state in which Plaintiff is a citizen that being Kansas, and the amount in controversy, without interest and costs, exceeds the sum or value of $75,000.00.

6.     Plex is a citizen of the State of Kansas due to it having been formed as a Kansas limited liability company, having its principal place of business in State of Kansas, and each of Plex's members being individuals who are citizens of State of Kansas.

7.     Peak Healthcare is a citizen of the State of Maryland due to it having been formed as a Maryland limited liability company and having its principal place of business in Denton, Maryland located at 710 Obrecht Road Sykesville, MD 21784, and upon information and belief, none of Peak Healthcare's members is a citizen of Kansas. Peak Healthcare may be served by serving its registered agent Corporate Creations Network, Inc. 2 Wisconsin Circle #700, Chevy Chase, MD 20815.

8.     Denton Nursing is a citizen of the State of Maryland due to it having been formed as a Maryland limited liability company and having its principal place of business in Denton, Maryland located at 420 Colonial Dr, Denton, MD 21629.  Upon information and belief, none of Peak Healthcare's members is a citizen of Kansas. Denton Nursing may be served by serving its registered agent Jack Ribakow at 6607 Park Heights Ave., Apt. A2, Baltimore, MD 21215.

9.     KHM is a citizen of the State of Pennsylvania due to it having been formed as a Pennsylvania limited liability company and having its principal place of business in Denton, Maryland located at 36 Airport Rd #105, Lakewood, NJ 08701.  Upon information and belief, none of KHM's members is a citizen of Kansas. KHM may be served by serving its registered agent AAA Services, LLC at 125 Locust St, Harrisburg, PA 17101.

10.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over all claims that are so related to the claims in the action within its original jurisdiction that they form part of the same case or controversy.

11.     Venue is proper in this Court pursuant to either 28 U.S.C. § 1391(b)(1) in that this action is filed in a judicial district in which the defendants reside, and/or § 1391(b)(2) in that this action is filed in a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred or a substantial part of property that is the subject of the action is situated.

## CONDITIONS PRECEDENT

12.     All conditions precedent to the bringing of this action have been performed, excused, and/or waived.

## BACKGROUND FACTS

**A.  The Factoring Relationship Between Plex Capital and D&K Staffing.**

13.     Plex is in the factoring business, which business involves, *inter alia*, the purchasing of accounts ("**Accounts**")[1] from businesses ("**Factoring Clients**") with whom it has formed a contractual relationship, the terms of which are generally contained in invoices.

14.     Within the factoring industry, the entity that purchases[2] Accounts is commonly referred to as the "Factor" or "Purchaser" of Accounts, in this case Plex. The entity from whom the Accounts are purchased is commonly referred to as the Factoring Client, or "Seller". The Factoring Client's customer for whom the Seller has performed service(s) or sold good(s) and to

---

[1] For the purpose of this pleading, the term "Accounts" is intended to have the meaning given to this term by the Uniform Commercial Code ("UCC"), as adopted throughout the United States. A typical uniform definition may be found in Maryland's version of the UCC, and the term means "a right to payment of a monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold…, (ii) for services rendered." Md. Code Ann., Com. Law § 9-102(a)(2).

[2] For the purpose of this pleading, the term "purchase" is intended to have the meaning given to this term by the UCC. A typical uniform definition may be found in Maryland's version of the UCC, and the term means "taking by sale, lease, discount, negotiation, mortgage, pledge, lien, security interest, issue or reissue, gift, or any other voluntary transaction creating an interest in property." Md. Code Ann., Com. Law § 1-201(b)(29).

whom an invoice is ordinarily issued to evidence the terms of sale and request payment is commonly referred to as the "Customer" or "Account Debtor."[3]

15.     On or about January 18, 2023, Plex and non-party, D&K Staffing, LLC ("**D&K Staffing**" or "**Factoring Client**") entered into an agreement with Plex titled "Accounts Purchase and Security Agreement" (as amended by that Personnel Staffing Rider to Accounts Purchase and Security Agreement, hereinafter the "**Factoring Agreement**"). A true and correct copy of the Factoring Agreement is attached hereto as **Exhibit A**, but for any terms or provisions which are deemed confidential, which have been removed or redacted.

16.     Dieudonna Ketum, as CEO, and an authorized agent of D&K Staffing executed the Factoring Agreement on behalf of D&K Staffing in favor of Plex.

17.     Pursuant to the Factoring Agreement, Plex contractually purchased Accounts from D&K Staffing  ("**Purchased Accounts**") arising from D&K Staffing's placement of nurse staffing services under certain staffing agreement(s) between D&K Staffing and its customers (i.e., the **Staffing Services** as more specifically identified below.) *See* **Exhibit A**, § 2.

18.     In addition, to secure all monetary and non-monetary obligations under the Factoring Agreement, D&K Staffing granted Plex a first priority security interest[4] in all, or substantially all of D&K Staffing's property, including, but not limited to, all Accounts and all proceeds ("**Collateral**").

19.     Until all of the Obligations under the Factoring Agreement have been paid in full, **whether or not D&K Staffing defaulted under the Factoring Agreement**, D&K Staffing

---

[3] For the purpose of this pleading, the term "Account Debtor" is intended to have the meaning given to this term by the UCC. A typical uniform definition may be found in Maryland's version of the UCC and the term means "a person obligated on an account." Md. Code Ann., Com. Law § 9-102(a)(3).

[4] Pursuant to Maryland's version of the UCC, Md. Code Ann., Com. Law § 1-201(b)(35), the term "Security Interest" means "an interest in personal property or fixtures which secures payment or performance of an obligation. 'Security interest' includes any interest of a consignor and a buyer of accounts, chattel paper, a payment intangible, or a promissory note in a transaction that is subject to Title 9 of this Article."

expressly and irrevocably granted a power of attorney to Plex to exercise the authority to do each

of the following in accordance with the following subsections of the Factoring Agreement:

10.1.1 Receive, take, endorse, assign, deliver, accept and deposit, in the name of Purchaser [Plex] or Seller [D&K Staffing], any and all Proceeds of any Collateral securing the Obligations or the Proceeds thereof;

10.1.2 Take or bring, in the name of Purchaser or Seller, all steps, actions, suits or proceedings deemed by Purchaser necessary or desirable to effect collection of or other realization upon any unpaid, or wrongfully paid over the notice requirement of Section 12.3, Accounts and Purchased Accounts;

10.1.3 Pay any sums necessary to discharge any lien or encumbrance which is or may become senior to Purchaser's ownership rights in the Purchased Accounts or Security Interest in the Collateral, which sums shall be included as Obligations hereunder, and in connection with which sums the Late Charge shall accrue and shall be due and payable;

10.1.4 Notify any Payor [i.e., Account Debtor] obligated with respect to any Account, that all rights to receive payment of Accounts (Purchased and non-Purchased Accounts) have been unconditionally assigned by Seller to Purchaser and that all payments must be made solely and exclusively to the order of and directly delivered to Purchaser; that Purchaser has also been assigned all rights to enforce any action or claim in connection with the above-stated assignments, including, but not limited to, all rights in connection with the underlying contracts and agreements giving rise or related to the Accounts. All enforcement rights provided herein may be undertaken at any time and in any manner that Purchaser may determine in its Business Judgment, either in the name of Purchaser or Seller. Nothing contained in this Agreement shall alter or adversely affect Purchaser's sole and exclusive right to enforce the right to receive payment of all Purchased or non-Purchased Accounts, regardless of any Business Judgment made as to enforcement of any breach of an underlying contract or any other agreement between Seller and a Purchaser;

10.1.5 Communicate directly with Seller's Payors to, among other things, verify the amount and validity of any Account created by Seller.

(brackets added to include party reference).

20.    In addition to the rights and powers granted to Plex in sections 10.1.1 through

10.1.5 in the Factoring Agreement, after an Event of Default, pursuant to Section 10.1.6.2 Plex is

also authorized to, among other things:

Extend the time of payment of, compromise or settle for cash, credit, return of merchandise, and upon any terms or conditions, any and all Accounts and discharge or release any Payor without affecting any of the Obligations.

21.     In addition, section 10.2. of the Factoring Agreement states that:

Seller [D&K Staffing] authorizes Purchaser [Plex] to accept, endorse and deposit on behalf of Seller any checks tendered by a Payor "in full payment" of its obligation to Seller. Seller shall not assert against Purchaser any claim arising therefrom, irrespective of whether such action by Purchaser effects an accord and satisfaction of Seller's claims, under §3-311 of the Uniform Commercial Code, or otherwise.

22.     Pursuant to the Factoring Agreement, "Before sending any Invoice to an Account Debtor, Seller [here, D&K Staffing] shall cause same to be conspicuously marked with a notice of assignment and a duty to pay Purchaser ("Notification of Assignment") in the form and manner as may be required by Purchaser." **Exhibit A** §12.3.

23.     Section 12.7 in the Factoring Agreement establishes Plex's right to dominion and control over all account debtor payments and/or proceeds of any Accounts, and reads, in relevant part, as follows:

…Seller shall remit to Purchaser, in kind, any Negotiable Instrument Seller receives from a Payor on an Account that is paid in violation of the Notification of Assignment as provided in Section 12.3. Moreover, in the event Seller deposits any Negotiable Instrument or receives payment electronically from a Payor after having received a Notification of Assignment as provided in Section 12.3, such payment and Proceeds <u>shall be held, in trust, by Seller for the exclusive benefit of Purchaser and Seller shall remit and pay such trust funds to Purchaser by no later than the second (2nd) Business Day following the date of receipt by Seller</u>.

(underlining added).

24.     In order to implement Plex's rights to receive payment, as the assignee, Plex issued a letter addressed, sent and delivered to the Account Debtor that reads as follows:

**NOTICE OF ASSIGNMENT AND PAYMENT REDIRECTION LETTER**

Dear Customer:

7

In order to accommodate the growth of our business, we have retained the services of PLEX Capital, LLC ("PLEX") to fund and manage our accounts, which arrangement includes our irrevocable sale and assignment to PLEX of all of our rights to receive payment on our currently outstanding and all future accounts and payment intangibles under all applicable laws including 9-406 of the Uniform Commercial Code. This change in procedure should allow us to serve you more efficiently.

ACCORDINGLY, IMMEDIATELY AFTER YOUR RECEIPT OF THIS NOTICE, PAYMENTS ON ALL INVOICES SHALL BE MADE SOLELY AND EXCLUSIVELY TO PLEX, AS FOLLOWS:

| By Mail: | By ACH: |
|---|---|
| **PLEX Capital, LLC c/o** | **PLEX Capital, LLC** |
| **D&K Staffing LLC** | **Account No.: XXXXX** |
| **XXXXX** | **Routing No.: XXXXX** |
| **XXXXX** | **Remittance: XXXXX** |

THIS NOTICE OF ASSIGNMENT AND PAYMENT REDIRECTION LETTER, WHICH CHANGES THE PAYEE ON OUR ACCOUNTS, IS EFFECTIVE IMMEDIATELY AND DUE TO POTENTIAL CYBER-SCAMMING, MAY NOT IN ANY WAY BE CHANGED, MODIFIED, ALTERED, REVOKED (COLLECTIVELY, "CHANGED") BY ANY FORM OF ELECTRONIC COMMUNICATION. THIS NOTICE OF PAYMENT REDIRECTION LETTER MAY ONLY BE CHANGED BY PLEX'S WRITTEN INSTRUCTIONS ISSUED BY AN AUTHORIZED REPRESENTATIVE OF PLEX AND DELIVERED TO YOU BY CERTIFIED OR REGISTERED MAIL. PAYMENT TO ANYONE OTHER THAN PLEX WILL NOT DISCHARGE YOUR OBLIGATION TO PAY ANY SUCH ACCOUNT OR PAYMENT INTANGIBLE.

If you have any questions concerning this notification of assignment, please contact:

**PLEX Capital, LLC**
**Attention: Josh Goode**
**(913) 229-4224**

Sincerely,                                   Confirmed,

D&K Staffing                                 Plex Capital, LLC
By: _____                  By: Josh Goode
Title: CEO                                    Title: Chief Operating Officer

8

(the "**Letter Notice of Assignment**"). (Bolding supplied). (private banking and contact information (and original signatures) removed as denoted by 'XXXXX'). The form of Letter Notice of Assignment is attached hereto as **Exhibit B**.

25.     Plex's  Letter Notice of Assignment was delivered to the Account Debtor, Denton Nursing, and its agents Peak Healthcare and KHM.

26.     On or about January 30, 2023, Plex's  Letter Notice of Assignment was delivered to Denton Nursing.

27.     On January or about 30, 2023, Peak Healthcare received Plex's  Letter Notice of Assignment via email.

28.     Pursuant to the Factoring Agreement, in addition to sending the Letter Notice of Assignment to Denton Nursing, Peak Healthcare and KHM, Plex required each and every invoice issued by D&K Staffing to contain in the face of each invoice the following assignment language:

> THIS ACCOUNT HAS BEEN SOLD & ASSIGNED TO PLEX CAPITAL
> LLC. PLEASE DIRECT PAYMENT TO:
> PLEX CAPITAL, LLC c/o
> D&K Staffing, LLC
> P.O. BOX 674804
> Dallas , TX 75267-4804
> REPORT ALL CLAIMS, OFFSETS AND/OR DISPUTES TO
> 913-308-4146 OR ACCOUNTING@PLEXCAPITAL.COM

See as referenced below in paragraph 37, **Exhibit D.**

**B.  The Staffing Agreement Between D&K Staffing, on the one hand, and Denton Nursing, on the other hand, for the Provision of Staffing Services.**

29.     D&K Staffing is a healthcare staffing agency.

30.     D&K Staffing contracted with Denton Nursing in order to provide healthcare associate staffing services.

31.     D&K Staffing, on the one hand, and Denton Nursing, on the other hand, entered into an agreement dated December 28, 2022 ("**Staffing Services Agreement**"). A true and correct copy of the Staffing Agreement is attached hereto as **<u>Exhibit C</u>**.

32.     On December 28, 2022, D&K Staffing's authorized agent,  Dieudonna Ketum, executed the Staffing Service Agreement on behalf of D&K Staffing.

33.     On December 28, 2022, Denton Nursing's authorized agent, Anita Tillery, executed the Staffing Services Agreement on behalf of Denton Nursing.

34.     Pursuant to the Staffing Services Agreement, D&K Staffing placed healthcare associates who provided healthcare staffing services to, or for the benefit of Denton Nursing, including, Registered Nurses (RN), Licensed Practical Nurses (LPN) and/or Nursing Assistants (CAN/GAN/CMA) (the "**Staffing Services**").

35.     The Staffing Services Agreement in Section 2 reflects the "compensation/rates" that Denton Nursing agreed to pay D&K Staffing for the Staffing Services performed by D&K Staffing as reflected in invoices issued by D&K Staffing to Denton Nursing.

36.     Section 4 of the Staffing Services Agreement entitled "Payment Terms" reads as follows:

> Payment is due 30 days after the invoice has been submitted. Invoice discrepancies must be discussed prior to the payment due date, if not the invoice will be considered final.

37.     D&K Staffing performed the Staffing Services as evidenced by the invoices issued to Denton Nursing reflecting the terms of payment, as follows:

| Invoice Number | Invoice Date | Invoice Due Date | Invoice Amount |
|---|---|---|---|
| 5 | 2/10/2023 | 3/12/2023 | $12,040.61 |
| 6 | 2/14/2023 | 3/16/2023 | $13,763.63 |
| 7 | 2/23/2023 | 3/25/2023 | $10,422.90 |
| 8 | 3/6/2023 | 4/5/2023 | $11,949.49 |
| 9 | 3/10/2023 | 4/9/2023 | $12,187.08 |
| 10 | 3/20/2023 | 4/19/2023 | $12,588.35 |
| 11 | 3/26/2023 | 4/25/2023 | $8,245.92 |
| 12 | 4/3/2023 | 5/3/2023 | $12,649.07 |
| 13 | 4/7/2023 | 5/7/2023 | $14,350.42 |
| 14 | 4/14/2023 | 5/14/2023 | $10,803.15 |
| 15 | 5/7/2023 | 6/6/2023 | $7,937.08 |
| 16 | 5/7/2023 | 6/6/2023 | $32,608.78 |
| | | | Total Due: $159,546.48 |

(the "**Matured and Unpaid Invoices**"). The Matured and Unpaid Invoices are attached hereto as

**Composite Exhibit D**.

38.    Each Matured and Unpaid Invoices contained a "Net 30" payment term, meaning

that each invoice is payable 30 days from the date of each invoice issued by D&K Staffing.

39.    The Matured and Unpaid Invoices have matured, and payment is due and owing in

accordance with the payment terms reflected in the invoices.

40.    Article 9 of the Uniform Commercial Code, §9-406(a), as adopted in Maryland as

Md. Code Ann., Com. Law § 9-406, states as follows:

**§ 9-406. Discharge of account debtor; notification of assignment; identification and proof of assignment; term prohibiting assignment ineffective**

(a) Subject to subsections (b) through (j), an account debtor [here, Peak Healthcare/Denton Nursing] on an account…**may discharge its obligation by paying the assignor [here, D&K Staffing] until, but not after, the account debtor [here, Peak Healthcare/Denton Nursing] receives a notification, authenticated by the assignor [here, D&K Staffing] or the assignee [here, Plex Capital], that the amount due or to become due has been assigned and that payment is to be made to the assignee [here, Plex Capital]. After receipt of the notification, the account debtor [here, Peak Healthcare/Denton Nursing] may discharge its obligation by paying the assignee [here, Plex Capital] and may not discharge the obligation by paying the assignor [here, D&K Staffing].**

(bolding added, and brackets included for reference purposes only).

41.     Due to the content and fact of delivery of the Letter Notice of Assignment to the Account Debtor, Denton Nursing in accordance with UCC § 9-406, and applicable common law, could only lawfully discharge its obligation on the Matured and Unpaid Invoices by remitting payment to Plex.

42.     Plex has not received any payments from any of the Account Debtors, its agents Peak Healthcare or KHM, the sums due on the Matured and Unpaid Invoices.

43.     Plex has retained the law firm of Ullman & Ullman, P.A. and Kramon & Graham, P.A. to represent it in this matter, and has agreed to compensate counsel for its professional legal services provided to Plex in this matter.

### COUNT I
### Breach of Contract against Denton Nursing
### for Collection of Matured and Unpaid Accounts

44.     Plex realleges and incorporates by reference paragraphs 1 through 43 above as if fully set forth herein.  Plex hereby sues defendant Denton Nursing for breach of contract for failure to pay accounts and states as follows.

45.     Pursuant to 9-607 of the UCC, adopted in Maryland as Md. Code Ann., Com. Law § 9-607, and applicable common law, Plex, as assignee of the right to receive payment, is entitled to collect from Denton Nursing, the Account Debtor, all of the amounts due and owing on the Matured and Unpaid Invoices.

46.     Md. Code Ann., Com. Law § 9-607, states, in relevant part:

Collection and enforcement generally.

**(A) If so agreed, and in any event after default, a secured party** [here, Plex]:

(1) may notify an account debtor [here, Denton Nursing] or other person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party [here, Plex];

(2) may take any proceeds to which the secured party [here, Plex] is entitled under section 9-315;

(3) **may enforce the obligations of an account debtor [here, Denton Nursing] or other person obligated on collateral and exercise the rights of the debtor [here, D&K Staffing] with respect to the obligation of the account debtor [here, Denton Nursing] or other person obligated on collateral to make payment or otherwise render performance to the debtor [here, D&K Staffing],** and with respect to any property that secures the obligation of the account debtor [here, **Denton Nursing**] or other person obligated on the collateral...

(emphasis added).

47.      In accordance with the Staffing Service Agreement between Denton Nursing and D&K Staffing, D&K Staffing materially and substantially performed the Staffing Services to and for the benefit of Peak Healthcare and in connection therewith, Denton Nursing became obligated on all Accounts arising under the agreement between Denton Nursing and D&K Staffing including the Matured and Unpaid Invoices, which were issued to Denton Nursing by D&K Staffing for payment for the Staffing Services.

48.      Denton Nursing received the Matured and Unpaid Invoices.

49.      Pursuant to Maryland's version of UCC § 9-406(a) and § 9-607, and applicable common law, the Account Debtor, Denton Nursing, could only discharge its obligation on the Matured and Unpaid Invoices by paying Plex after receipt of Plex's Letter Notice of Assignment, and payment to D&K Staffing (or any other person) is ineffective to discharge the obligation, so Plex is entitled to enforce payment in connection therewith.

50.      Denton Nursing sent one or more payments directly to D&K Staffing, instead of Plex, <u>after receipt</u> and <u>in disregard</u> of Plex's Letter Notice of Assignment, the effect of which is that the obligation is not discharged.

51.      Denton Nursing is and remains liable to Plex for all sums due on the Matured and Unpaid Invoices, and any other unpaid, open and matured Accounts in respect to which payment is or becomes due in connection with Staffing Services provided by D&K Staffing.[5]

52.      Plex has suffered damages as a result of the Account Debtor, Denton Nursing's failure to timely pay Plex including (without limitation) all sums due on the Matured and Unpaid Invoices.

53.      Denton Nursing owes Plex the sum of not less than $159,546.48 on the Matured and Unpaid Invoices together with all amounts due and owing in respect to any other invoices, for which payment was not made to Plex, on or after the date of delivery of the initial Plex Letter Notice of Assignment, plus costs and expenses, and prejudgment interest at the rate prescribed by law.

**WHEREFORE**, Plex Capital, LLC respectfully request that this Court enter a judgment awarding all damages, legal and equitable, including (without limitation) compensatory damages against Defendant, Denton Nursing and Rehab, LLC in the amount of $159,546.48, and any other amounts owing to Plex, including, without limitation any other accounts that Plex may discover in this case is or becomes due and payable by any Account Debtor and any other accounts in respect to which the Account Debtor misdirected payments after receipt of the Plex's Notices of

---

[5] Plex's claim includes any additional invoices that during the discovery period Plex may learn the Account Debtor misdirected payment by paying D&K Staffing, instead of paying Plex after the Account Debtor's receipt of Plex's Notice of Assignment.

Assignment, together with costs and expenses, and prejudgment interest and such other relief as this Court deems necessary and proper.

## COUNT II
### Negligence against Denton Nursing, Peak Healthcare and KHM

54.    Plex realleges and incorporates by reference paragraphs 1 through 53 above as if fully set forth herein. Plex hereby sues defendants Denton Nursing, Peak Healthcare and KRM for Negligence for failure to pay accounts and states as follows.

55.    Pursuant to 9-607 of the UCC, adopted in Maryland as Md. Code Ann., Com. Law § 9-607, and applicable common law, Plex, as assignee of the right to receive payment, is entitled to collect from the Account Debtor all of the amounts due and owing on the Matured and Unpaid Invoices.

56.    Md. Code Ann., Com. Law § 9-607, states, in relevant part:

> Collection and enforcement generally.
>
> **(A) If so agreed, and in any event after default, a secured party** [here, Plex]:
>
> (1) may notify an account debtor [here, Denton Nursing] or other person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party [here, Plex];
>
> (2) may take any proceeds to which the secured party [here, Plex] is entitled under section 9-315;
>
> (3) **may enforce the obligations of an account debtor [here, Denton Nursing] or other person obligated on collateral and exercise the rights of the debtor [here, D&K Staffing] with respect to the obligation of the account debtor [here, Denton Nursing] or other person obligated on collateral to make payment or otherwise render performance to the debtor [here, D&K Staffing],** and with respect to any property that secures the obligation of the account debtor [here, **Denton Nursing**] or other person obligated on the collateral…

(emphasis added).

15

57. In accordance with the Staffing Service Agreement between Denton Nursing and D&K Staffing, D&K Staffing materially and substantially performed the Staffing Services to and for the benefit of Peak Healthcare and in connection therewith, Denton Nursing became obligated on all Accounts arising under the agreement between Denton Nursing and D&K Staffing including the Matured and Unpaid Invoices, which were issued to Denton Nursing by D&K Staffing for payment for the Staffing Services.

58. Denton Nursing received the Matured and Unpaid Invoices.

59. Upon information and belief, Peak Healthcare and KHM as Denton Nursing's authorized agents assumed duties and responsibilities, jointly or severally for payment of the invoices issued by D&K Staffing in order to satisfy payment of the Staffing Services performed by D&K Staffing including the Matured and Unpaid Invoices.

60. After D&K Staffing performed the Staffing Services to, or for the benefit of Denton Nursing in accordance with the Staffing Agreement, in the parties normal course of business Peak Healthcare and KHM on behalf of, and authorized agents of Denton Nursing, approved and processed payment to Plex, as assignee of D&K Staffing's rights to receive payment of the invoices issued by D&K Staffing in order to satisfy payment of the Staffing Services performed by D&K Staffing.

61. Upon information and belief, Denton Nursing, Peak Healthcare and KHM are owned, operated and/or under common management or control.

62. Upon information and belief, Peak Healthcare KHM at the direction of Denton Nursing have and/or assumed duties to pay invoices issued by D&K Staffing.

63. Pursuant to Maryland's version of UCC § 9-406(a) and § 9-607, and applicable common law, Denton Nursing, Peak Healthcare and KHM could only discharge Denton Nursing's

16

obligation on the Matured and Unpaid Invoices by paying Plex after receipt of Plex's Letter Notice of Assignment, and payment to D&K Staffing (or any other person) is ineffective to discharge the obligation, so Plex is entitled to enforce payment in connection therewith.

64.    Denton Nursing, Peak Healthcare and KHM may each qualify as an Account Debtor, and/or as agent of the Account Debtor charged with a duty to make payment on behalf of the Account Debtor to satisfy the invoices, in respect to which each entity has a duty to pay the amounts due under the Matured and Unpaid Invoices owing to Plex, as assignee of D&K Staffing's rights to receive payment.

65.    Denton Nursing, Peak Healthcare and/or KHM sent one or more payments directly to D&K Staffing, instead of Plex, after receipt and in disregard of Plex's Letter Notice of Assignment, the effect of which is that the obligation is not discharged.

66.    Denton Nursing, Peak Healthcare and KHM each is and remains liable to Plex for all sums due on the Matured and Unpaid Invoices, and any other unpaid, open and matured Accounts in respect to which payment is or becomes due in connection with Staffing Services provided by D&K Staffing.[6]

67.    Plex has suffered damages as a result of Denton Nursing's, Peak Healthcare's and KHM's breach of the duty to timely pay Plex including (without limitation) all sums due on the Matured and Unpaid Invoices the sum of not less than $159,546.48 together with all amounts due and owing in respect to any other invoices, for which payment was not made to Plex, on or after the date of delivery of the initial Plex Letter Notice of Assignment, plus costs and expenses, and prejudgment interest at the rate prescribed by law.

---

[6] Plex's claim includes any additional invoices that during the discovery period Plex may learn the Account Debtor misdirected payment by paying D&K Staffing, instead of paying Plex after the Account Debtor's receipt of Plex's Notice of Assignment.

**WHEREFORE**, Plex Capital, LLC respectfully request that this Court enter a judgment awarding all damages, legal and equitable, including (without limitation) compensatory damages against Defendants, Denton Nursing and Rehab, LLC, Denton MD Opco LLC d/b/a Peak Healthcare at Denton and Key Health Management LLC, jointly and severally, in the amount of $159,546.48, and any other amounts owing to Plex, including, without limitation any other accounts that Plex may discover in this case is or becomes due and payable by any Account Debtor and any other accounts in respect to which the Account Debtor misdirected payments after receipt of the Plex's Notices of Assignment, together with costs and expenses, and prejudgment interest and such other relief as this Court deems necessary and proper.

<u>**COUNT III**</u>
<u>**Account Stated against Denton Nursing**</u>

68.     Plex realleges and incorporates by reference paragraphs 1 through 67 above as if fully set forth herein. Plex hereby sues defendants Denton Nursing, Peak Healthcare and KRM for account stated for failure to pay accounts and states as follows

69.     D&K Staffing and Denton Nursing are parties to a Staffing Services Agreement, pursuant to which D&K Staffing agreed to perform the Staffing Services giving rise to indebtedness owing to D&K Staffing by Denton Nursing.

70.     The Matured and Unpaid Invoices reflect the previous transactions between the parties establishing a debtor-creditor relationship.

71.     The Matured and Unpaid Invoices reflect the terms of payment of an express agreement between the parties on the amount due from Denton Nursing to D&K Staffing for the Staffing Services performed by D&K Staffing.

72.     The Matured and Unpaid Invoices constitute an account that was rendered to Denton Nursing, the party sought to be charged reciting the amount of the existing debt owing to D&K Staffing for the Staffing Services.

73.     Denton Nursing promised to pay D&K Staffing the face amount due for the Staffing Services performed by D&K Staffing as reflected in the invoices.

74.     Denton Nursing received the Matured and Unpaid Invoices.

75.     Denton Nursing did not object to the invoices within a reasonable time after its receipt of the invoices issued by D&K Staffing.

76.     Denton Nursing expressly agreed to the correctness of balances of the invoices owing for the Staffing Services performed by D&K Staffing.

77.     Pursuant to section 4 of the Staffing Services Agreement Denton Nursing agreed to raise any "Invoice discrepancies must be discussed prior to the payment due date, if not the invoice **will be considered final**." (bolding supplied).

78.     Denton Nursing failed to object to the correctness of the stated amounts in the Matured and Unpaid Invoices and continued to accept the Staffing Services, which constitutes an agreement to pay the face amounts stated in the invoices and an admission that the Matured and Unpaid Invoices constitute a present and existing debt.

79.     Pursuant to the terms of the Staffing Services Agreement and the usual course dealings between the parties, Denton Nursing assented to the account stated, therefore striking a balance owing on the invoices by D&K Staffing.

80.     Denton Nursing is and remains liable to Plex, as assignee of the right to receive payment for all sums due on the Matured and Unpaid Invoices in the total amount of $159,546.48, plus costs and expenses and prejudgment interest at the rate prescribed by law.

**WHEREFORE**, Plex Capital, LLC respectfully request that this Court enter a judgment awarding damages to Plex against Defendant, Denton Nursing and Rehab, LLC in the amount of $159,546.48, together with costs and expenses, and prejudgment interest and such other relief as this Court deems necessary and proper

**COUNT IV**
**Unjust Enrichment against Denton Nursing, Peak Healthcare and KHM**
**(As authorized by Fed. R. Civ. P. 8(a)(3), in the alternative or different type of relief)**

81.    Plex realleges and incorporates by reference paragraphs 1 through 80 above as if fully set forth herein.

82.    D&K Staffing conferred a benefit upon the defendants, Denton Nursing, Peak Healthcare and KHM by performing the Staffing Services.

83.    Denton Nursing, Peak Healthcare and KHM appreciated or had knowledge of the Staffing Services performed by D&K, and Denton Nursing, Peak Healthcare and KHM accepted or retained the Staffing Services under circumstances as to make it inequitable for Denton Nursing, Peak Healthcare and KHM to accept the Staffing Services without payment of its value.

**WHEREFORE**, Plex Capital, LLC respectfully request that this Court enter a judgment awarding damages to Plex against Defendants, Denton MD Opco LLC d/b/a Peak Healthcare at Denton, Denton MD Opco LLC d/b/a Peak Healthcare at Denton and Key Health Management LLC, jointly and severally, for the value of the Staffing Services provided by D&K Staffing, together with costs and expenses, and prejudgment interest and such other relief as this Court deems necessary and proper.

Respectfully submitted,

/s/ David J. Shuster
David J. Shuster (Fed Bar No.: 23120)
Kramon & Graham, P.A.
One South Street
Suite 2600
Baltimore, Maryland  21202
dshuster@kg-law.com
(410) 752-6030 Telephone
(410) 539-1269 Facsimile


MOTION FOR SPECIAL ADMISSION
TO BE FILED:
Michael W. Ullman
Jared A. Ullman
Ullman & Ullman, P.A.
2500 N. Military Trial
Suite 100
Boca Raton, Florida  33433
michael.ullman@uulaw.net
jared.ullman@uulaw.net
(561) 338-3535 Telephone
(561) 338-3581 Facsimile

Attorneys for Plaintiff
Plex Capital, LLC

Date: October 6, 2023